IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

D.J. DIAMOND IMPORTS, LLC    *
et al.          *
            *
v.           *
            *  Civil Action No. WMN-11-2027
SILVERMAN CONSULTANTS, LLC   *
et al.          *
            *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

   Before the Court is a Motion to Dismiss Amended Complaint. ECF No. 15.  The motion is fully briefed.  Upon a review of the papers and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and the motion will be granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

   This is an action for breach of contract and closely related claims that involve two sets of defendants.  The members of the first set – Jack Brown, Jay Bee Diamonds & Jewelry Ltd (Jay Bee), and Bonded Jewelry Exchange Ltd (Bonded) (collectively, the Maryland Defendants)- all are citizens of Maryland for purposes of diversity jurisdiction.  Defendant Brown buys and sells stones, metals, and jewelry through his two companies, Jay Bee and Bonded.  Both businesses operate from a location in Reisterstown, Maryland referred to as "The Store."

The members of the second set of defendants – Silverman
Consultants, LLC (Silverman), Robert Epstein and Craig Allen
(collectively, the Foreign Defendants) all are citizens of
states other than Maryland for purposes of diversity
jurisdiction.  Defendant Silverman is an Illinois limited
liability company with headquarters in South Carolina that
specializes in turning around jewelry businesses, selling off
inventory, and liquidating entire stores.  Epstein is
Silverman's President.  Allen is an agent or employee of
Silverman and had the most direct involvement in Silverman's
relationship with The Store, as described below.

Plaintiff Yaacov Dassa is owner of Plaintiff D.J.'s Diamond
Imports, LLC, (D.J. Diamonds) which is a wholesaler of diamonds,
metals, and jewelry.  Dassa and D.J Diamonds have conducted
business with Defendant Brown at The Store for a number of
years.  On December 11, 2006, Dassa and Brown entered into a
contract allowing Dassa to use The Store to purchase jewelry
from the public for resale, splitting the profits between them.
Dassa also regularly sold to the Maryland Defendants directly.
Rather than receiving payment on delivery, Dassa recorded monies
owed in an accounts receivable ledger.  Defendant Brown
guaranteed payment of those accounts receivable by executing a
Promissory Note, dated December 1, 2009, and later modified on
June 10, 2011.  No payments have been made on the Promissory

Note since the June 2011 modification and a balance of
$218,890.00 remains outstanding.

In 2010, Jay Bee entered into two Sale Promotion Consulting
and Loan and Security Agreements with Silverman, one in April
and one in July.  In the April agreement, Jay Bee allowed
Silverman to conduct promotional sales of The Store's inventory
in exchange for a loan of $40,000 to cure delinquent taxes.  In
the July Agreement, Jay Bee authorized Silverman to conduct a
"going out of business sale" as Jay Bee's agent.  After entering
these agreements, Silverman began to take full control of The
Store through its Field Supervisor, Craig Allen.  Since the July
2010 takeover, Allen has refused to allow Dassa's resale
operation to continue at the Store.  Plaintiffs also allege that
Allen reneged on an oral promise to pay the balance of the
Promissory Note.  In March 2011, Silverman ended its liquidation
sale at The Store and transported the entire inventory out of
the state.

The arrangement between Silverman and the Maryland
Defendants has generated several lawsuits.  The Maryland
Defendants have filed suit against the Foreign Defendants in the
Circuit Court for Baltimore County alleging mismanagement of The
Store, unlawful taking of The Store's proceeds, and the illegal
removal of The Store's inventory.  Case No. 03C11003892.  The
Foreign Defendants have also filed suit in the Circuit Court for

3

Baltimore County against the Maryland Defendants, alleging breach of the two consulting agreements.  On July 22, 2011, D.J. Diamonds and Dassa filed this action against both sets of defendants.[1]  In bringing this suit, Plaintiffs asserted that this Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a).

While segmented into 22 separate counts, the Amended Complaint attempts to assert just a few distinct causes of action: breach of the June 11, 2006 contract - Counts I, III, V, VII, IX, and XI; default on the Promissory Note – Counts II, IV, VI, VIII, X, and XII; tortious interference with the June 11, 2006, contract and the Promissory Note – Counts XIII to XVIII; "breach of third party beneficiary" – Counts XIX to XXI; and a claim for doing business in Maryland without registering as a foreign corporation – Count XXII.  Counts I through VI are brought against the Maryland Defendant and Counts VII through XXII are brought against the Foreign Defendants.

The Foreign Defendants filed the instant motion to dismiss on September 12, 2011, arguing that this Court has no jurisdiction over the action because there is not complete diversity in that Plaintiffs and the Maryland Defendants are all citizens of Maryland for jurisdictional purposes.  The Foreign

---

[1]  For reasons not readily apparent, Plaintiffs filed a Complaint and an Amended Complaint on the same date.

Defendants also argue that all of the counts asserted against them fail to state claims upon which relief could be granted.

In response to the motion to dismiss, Plaintiffs filed a Notice of Voluntary Dismissal of the three Maryland Defendants. In their Reply, the Foreign Defendants argued that the Amended Complaint must now be dismissed under Rule 12(b)(7) of the Federal Rules of Civil Procedure based upon Plaintiffs' failure to join a party needed for just adjudication.  While the Foreign Defendants raised this Rule 12(b)(7) argument, they do little to support it beyond citation to the Rule and a single inapposite decision of this Court.[2]

Plaintiffs then attempted to file a "Reply to Defendants' Response to Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Complaint."  Because this document is a sur-reply for which leave of court is required but never requested, the document was not accepted for filing.  The Court sent a letter to Plaintiffs, ECF No. 26, explaining that leave of Court was necessary but Plaintiffs have not requested such leave. Therefore, what the Court now has before it is a motion poorly

---

[2]  The Foreign Defendants cite <u>Ward v. Walker</u>, 725 F. Supp. 2d 506 (D. Md. 2010).  <u>Ward</u> was a medical malpractice/wrongful death action brought by the widow of the deceased.  The decedent's daughter was not named in the suit and could not be as she was a Maryland resident and her presence in the suit would defeat diversity jurisdiction.  Because the Maryland Wrongful Death Act requires that all beneficiaries must be joined in a single action, this Court found that the case had to be dismissed.  725 F. Supp. 2d at 512.

briefed as to Rule 12(b)(7) and somewhat more completely briefed as to Rule 12(b)(6).

## II. FAILURE TO JOIN A NECESSARY PARTY

When a defendant moves to dismiss a complaint for failure to join a party pursuant to Rule 12(b)(7), a court conducts a two-step inquiry for applying Rule 19 of the Federal Rules of Civil Procedure, which governs the joinder of parties. See Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). First, a court determines whether a party is necessary to the action. Id. Under Rule 19(a), a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a). If the party is necessary but his inclusion in the action would destroy diversity, then the court proceeds to the second part of the inquiry, which requires the court to decide if the party is indispensable under Rule 19(b). Owens-Illinois, 186 F.3d at 440. In making that determination, the court considers four factors: (1) the extent a judgment rendered would be prejudicial to the absent or existing parties; (2) whether relief can be shaped to lessen or avoid any prejudice; (3) whether a judgment will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed. Fed. R. Civ. P. 19(b). If the party is indispensable, meaning the action cannot

proceed in that party's absence, then the case must be
dismissed.  Owens-Illinois, 186 F.3d at 440.

The Rule 19 inquiry is a practical one and rests in the
sound discretion of the trial court.  Heinrich v. Goodyear Tire
& Rubber Co., 532 F. Supp. 1348, 1359 (D. Md. 1982).  Dismissal
of a case for nonjoinder, however, is a drastic remedy and
should be employed sparingly.  Nat'l Union Fire Ins. Co. of
Pittsburgh, Pennsylvania v. Rite Aid of South Carolina Inc., 210
F.3d 246, 250 (4th Cir. 2000).  Generally, dismissal is only
ordered when the resulting defect cannot be remedied and
prejudice or inefficiency will certainly result from continuing
with the action without the absent defendant.  Owens-Illinois,
186 F.3d at 441.  Furthermore, the party moving for dismissal
has the burden of demonstrating that dismissal is appropriate.
R-Delight Holding LLC v. Anders, 246 F.R.D. 496, 499 (D. Md.
2007).

Here, there is little question that the Maryland Defendants
are "necessary" parties under Rule 19(a).  At the center of this
dispute is Plaintiffs' December 11, 2006 Contract and the
Promissory Note, and the Maryland Defendants are parties to both
the contract and the note.  "It is well established that a party
to a contract which is the subject of the litigation is
considered a necessary party."  Ryan v. Volpone Stamp Co., Inc.,
107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000); see also

7

KnowledgePlex, Inc. v. Placebase, Inc., 2008 WL 5245484, at *4
(N.D. Cal. Dec. 17, 2008) ("Courts frequently have concluded
that parties to a contract are 'necessary' in an action on the
contract.").

While "necessary" under Rule 19(a), the Court finds that
the Maryland Defendants are not "indispensable" under Rule
19(b).  As explained below, the claims against the Foreign
Defendants are essentially claims for tortious interference with
contract, not for breach of the contracts themselves.  Aside
from noting that the Maryland Defendants are parties to the
contracts at issue – which makes them necessary but not
indispensable – the Foreign Defendants provide no analysis of
the Rule 19(b) factors.  Under a similar factual situation, the
Tenth Circuit has held that a claim for tortious interference
with contract can be brought by one party to a contract where
the other party to the contract was dismissed to preserve
diversity jurisdiction.  Thunder Basin Coal v. Southwestern
Public Serv., 104 F.3d 1205 (10th Cir. 1997).

**III. FAILURE TO STATE A CLAIM**

The standard for a Rule 12(b)(6) motion to dismiss is well
known.  To survive such a motion, a complaint must "contain
sufficient factual matter . . . to 'state a claim to relief that
is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, -
---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  In considering
such a motion, the court is required to accept as true all well-
pled allegations in the Complaint, and to construe the facts and
reasonable inferences from those facts in the light most
favorable to the plaintiff.  Ibarra v. United States, 120 F.3d
472, 474 (4th Cir. 1997).

### A. Breach of Contract and Breach of Promissory Note

None of the Foreign Defendants were parties to either the
December 11, 2006, Agreement or the Promissory Note when those
agreements were reached.  Confronted with this obvious flaw in
their breach of contract claims against these Defendants,
Plaintiffs posit two theories to preserve these claims.  First,
Plaintiffs suggest an argument based upon agency, arguing that
the April and July 2010 Agreements made Silverman the agent for
the Maryland Defendants.  While acknowledging that "issues of
agency usually arise when a plaintiff seeks to hold the
principal responsible for the misdeeds of its agent, the law of
agency applied to the facts here gives rise to the reasonable
inference that Silverman Consultants, as agent, must return the
assets in currency and inventory belonging to the principal."
Opp'n at 7.  Plaintiffs cite no authority for this conclusory

9

position.  Nothing in the 2010 Agreements evinces any intention

on the part of any of the Defendants that the Foreign Defendants

would be assuming the Maryland Defendants' liabilities.  In

fact, the Agreements clearly negate that intention.  See April

2010 Agreement ¶ 16 (providing that nothing in the Agreement

"will cause or deem to cause [Silverman] to assume or have any

liability, directly or indirectly, for any debt or obligation of

[Jay Bee]).

Plaintiffs' second theory relies on an alleged oral

agreement made by Defendant Allen on behalf of Defendant

Silverman "that the outstanding monies owed to [Dassa] under the

Promissory Note would be paid from the proceeds of the [going

out of business] sale."  Opp'n at 5.  Plaintiffs assert that

Allen made this promise, "in consideration for the debt being

satisfied and to pacify Plaintiff Dassa so he would stop

demanding the monies owed to him from the Defendants."  Id. at

8.  Thus, as described by Plaintiffs, this oral agreement, if

made, was an agreement to answer for the debt of another.  As

such, it is subject to the statute of frauds and, because it is

alleged to be an oral agreement, it is unenforceable.  Md. Code

Ann., Cts. & Jud. Proc. § 5-901(1) ("Unless a contract or

agreement upon which an action is brought, or some memorandum or

note of it, is in writing and signed by the party to be charged

or another person lawfully authorized by that party, an action

may not be brought:(1) To charge a defendant on any special
promise to answer for the debt, default, or miscarriage of
another person."); see also Solid Concepts, LLC v. Fallen
Soldiers, Inc., 2010 WL 3123269 at *2 (D. Md. Aug. 9, 2010).

Plaintiffs' breach of contract claims against the Foreign
Defendants (Counts VII through XII) will be dismissed.

## 2. Plaintiffs as Third Party Beneficiaries

Under Maryland law, a third party beneficiary is one who
can show that "the contract was intended for his benefit" and
"it . . . clearly appear[s] that the parties intended to
recognize him as the primary party in interest and as privy to
the promise.  An incidental beneficiary acquires by virtue of
the promise no right against the promisor or the promisee."
Marlboro Shirt Co. v. Am. Dis. Tel. Co., 77 A.2d 776, 777 (Md.
1951).  Moreover, "[i]n order to recover it is essential that
the beneficiary shall be the real promisee; i.e., that the
promise shall be made to him in fact, though not in form.  It is
not enough that the contract may operate to his benefit."  Id.
In determining whether one is a third party beneficiary, it is
proper to look to the terms of the contract, as well as the
surrounding circumstances.  Gray & Son, Inc. v. Maryland Deposit
Ins. Fund Corp., 575 A.2d 1272, 1276 (Md. Ct. Spec. App. 1990).

The substance of Plaintiffs' third party beneficiary claim
is not particularly clear.  In moving to dismiss these claims,

the Foreign Defendants made a reasonable assumption, based upon the language of the Amended Complaint, that Plaintiffs were asserting that they were third party beneficiaries of the December 11, 2006, Contract and the Promissory Note. Plaintiffs, of course, could not be third party beneficiaries of a contract of which they were also parties and, on that basis, Defendants moved to dismiss the claims.

Plaintiffs responded that their intent was to assert that they were third parties beneficiaries of the April and July 2010 Agreements between the Maryland Defendants and the Foreign Defendants.  Opp'n at 10.  Assuming the Amended Complaint could be read to be asserting such a claim, there are no factual allegations in the Amended Complaint that would support that theory.  There is nothing in the allegations concerning the formation of the April or July 2010 Agreements to indicate that the Defendants were even considering any potential benefit to Plaintiffs.  Furthermore, while the Agreements do reference a lien held by Provident Bank on substantially all of Jay Bee's assets and cites Jay Bee's indebtedness to the State of Maryland and the Internal Revenue Service for an outstanding tax liability as reasons for entering the Agreements, see April 2010 Agreement – Recitals, Plaintiffs or any debt owed to Plaintiffs are nowhere mentioned in the Agreements.

12

The Court concludes that the Amended Complaint does not support any third party beneficiary claims and will thus dismiss Counts XIX through XXI.

### 3. Failure to Register as Foreign Corporation

In Count XXII of the Amended Complaint, Plaintiffs allege that Silverman failed to register as a foreign corporation doing business in the State of Maryland and, therefore, each and every transaction performed by Silverman in Maryland constituted an illegal business transaction under Md. Code Ann., Corp. & Ass'ns §§ 7-201 et seq.  The Foreign Defendants respond that Silverman is a limited liability company, not a corporation, and thus § 7-201 et seq. is inapplicable.  Plaintiffs counter that, if a limited liability company and not a corporation, Silverman would still be subject to and be in violation of the registration requirements of Md. Code Ann., Corp. & Ass'ns §§ 4A-1001 et seq.

Regardless of Silverman's corporate form, Plaintiffs cite no authority for the proposition that either statute gives rise to a private cause of action.  While Silverman's unregistered status might have some impact on Silverman's ability to bring suit in Maryland or might limit its defenses in some manner, its unregistered status is not grounds for a separate claim.  Count XXII will be dismissed.

### 4. Tortious Interference with Contract

Plaintiffs bring tortious interference claims related to both the December 11, 2006, Contract between Plaintiffs and the Maryland Defendants as well as related to the Promissory Note. To prevail on a claim for tortious interference with contract, a plaintiff must establish "(1) the existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom." Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 313 (Md. Ct. Spec. App. 1995).

As for the claim related to the Promissory Note, the Court finds no basis, whatsoever. As Defendants observe, the Promissory Note is simply a personal promise to pay a debt owed. There is no specified time by which the repayment was to be made and Plaintiffs acknowledge that Brown continues to be obligated to Plaintiffs for the full amount of the Promissory Note. Am. Compl. ¶ 17. Simply stated, there has been no breach of the Promissory Note.

The only claims asserted by Plaintiffs in the Amended Complaint against the Foreign Defendants that even begin to approach the Rule 12(b)(6) standard of plausibility are their

14

tortious interference with contract claims related to the December 11, 2006, Contract.  Plaintiffs allege that Defendant Allen, as agent for Defendant Silverman, "used threats of physical harm, intimidation and unfulfilled promises to directly interfere with Plaintiffs['] contractual rights [under the December 11, 2006, Contract]."  Id. ¶ 13.  Plaintiffs allege further that the Foreign Defendants' refusal to allow Dassa to continue to perform under the contract deprived him of his primary and necessary source of income.  Id. ¶ 15.

The Foreign Defendants contend that, because the December 11, 2006, Contract was of no specific duration, it was terminable at will.  Since there is no breach when an at-will contract is terminated by one of the parties, the Foreign Defendants posit that there can be no action for tortious interference with such a contact.  In support of that argument, Defendant cite the Maryland Court of Appeals decision in Macklin v. Logan, 639 A.2d 112 (Md. 1994).

In Macklin, the Court of Appeals noted that the tort of interference with contract is "well established" in Maryland. 639 A.2d at 116 (collecting cases).  The court also noted that the tort has "two general manifestations," one where a third party intentionally interferes with an existing contract and induces a breach, the other where the third party "maliciously or wrongfully infringes upon an economic relationship."  Id. at

15

117.  These two manifestations differ in their tolerance for interference.  "'[W]here a contract between two parties exists, the circumstances in which a third party has a right to interfere with the performance of that contract are more narrowly restricted.  A broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved.'"  Id. (quoting Natural Design, Inc. v. Rouse Co., 485 A.2d 663, 674 (Md. 1984)).

While there is a "broader right to interfere" where a contract is terminable at will, the scope of that right is not unlimited.  A plaintiff can still bring a claim for intentional interference with a terminable at will contract if he can establish that the third party acted "improperly or wrongfully."  Id. at 121.  The conduct recognized by Maryland courts that can lead to liability in this context includes "'violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.'"  K & K Management, Inc. v. Lee, 557 A.2d 965, 979 (Md. 1989) (quoting W. Prosser, Handbook on the Law of Torts § 130, at 952-53 (4th ed. 1971)).  Plaintiffs have alleged that the Foreign Defendants employed threats of physical harm and intimidation to induce the Maryland Defendants to breach the December 11, 2006,

Contract, and on that slim thread Plaintiffs' tortious interference claim survives.

**IV. CONCLUSION**

For these reasons, the motion to dismiss will be granted as to all but Plaintiffs' tortious interference claims related to the December 11, 2006, Contract (Counts XIII, XV and XVII).  A separate order consistent with this memorandum will be issued.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: January 18, 2012.